FRANK P. ELLIOTT *vs.* FIRE COMMISSIONER OF BOSTON.

Suffolk.    March 23, 1923. — May 25, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Boston Fire Department. Words,* " Member of the fire department."

A blacksmith's helper in the repair division or repair shop branch of ·the fire department of Boston is not such a " member of the fire department of the city of Boston " as to be entitled to the benefit of the pension provisions of St. 1913, c. 800.    *Fickett* v. *Boston Firemen's Relief Fund,* 220 Mass. 319, and *Nolan* v. *Boston Firemen's Relief Fund,* 236 Mass. 420, distinguished.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on May 25, 1922, for a writ of mandamus directing that the petitioner be retired and, as a member of the Boston fire department, be placed on the pension roll under St. 1913, c. 800.

The petition was referred to an auditor.    Material findings by the auditor are described in the opinion.    By order of *Pierce,* J., the case was reserved for determination by the full court upon the pleadings and the auditor's report.

*J. F. Barry,* for the petitioner.

*S. Silverman,* for the respondent.

DECOURCY, J.    This is a petition for a writ of mandamus to compel the respondent to retire the petitioner on a pension, under St. 1913, c. 800.    The first section of the statute reads: " Any member of the fire department of the City of Boston who has performed service in that department for a period of not less than twenty-five years and who has reached the age of fifty-five years shall, upon his own petition to the fire commissioner, be retired and placed upon the pension roll."    The petitioner was duly appointed a blacksmith's helper in the repair division or repair shop branch of the fire department in July, 1882, and continued in that employment to the date of his petition: when he was sixty-nine years of age.    The only issue in the case is whether he is a " member of the fire department " within the meaning of said § 1 of the statute.

The organization of the Boston fire department comprises the following: headquarters, fire force, fire-alarm branch, repair division, veterinary service, medical service, and motor service.   The Rules and Regulations (1917) provide: " 543.   The force employed in the repair division shall consist of machinists, blacksmiths, wheelwrights, harness-makers, clerks, watchmen, etc."   As the auditor finds, the hours and nature of labor of employees of the repair branch, their wages, meal periods, the rules and regulations governing their employment, their civil service rating, the civil service rules and regulations governing their appointment and advancement are different from those of the members of the fire fighting force.   Men now appointed to work like that done by the petitioner are taken from the labor service of the civil service commission, while men of the fire fighting force are drawn from the official service.   These are obliged to take a physical examination before appointment, to attend the drill school, and to wear uniforms.   Nor are they entitled to the benefit of the workmen's compensation act. *Deveny's Case,* 223 Mass. 270.   More important than these distinctions recognized in the organization of the department is the essential difference in the nature of their work: the members of the fire fighting force being daily exposed to most hazardous duties.   For the performance of those duties are required among other things quickness of movement, powers of endurance, ability to mount ladders and work at lofty heights, and capacity to form safe judgment in emergencies.   In order to maintain a body of men with these needed qualifications, and unimpaired by the strain incident to such a life, the Legislature may well have deemed it wise to provide for their retirement at the comparatively early age of fifty-five years.

An examination of the history of this legislation discloses nothing to indicate that the Legislature intended to extend this right of retirement on pension at the age of fifty-five years to the numerous employees of the department whose work was similar to that done in other city departments, and elsewhere, and which was in no wise hazardous.   The original pension provision, St. 1880, c. 107, § 1, was appli-

cable only to " any permanent or call member . . . who has become disabled while in the actual performance of duty, or any permanent member who has performed faithful service in the department for a period of not less than fifteen consecutive years."   By St. 1888, c. 174, § 1, " No such member shall be placed on the pension roll unless . . . such member is permanently incapacitated, either mentally or physically, from performing his duty as a member of the department."   The references to the " permanent " and the " call " force in these statutes, and in the subsequent statutes 1891, c. 404, and 1892, c. 347, indicate that the pension roll was designed for the benefit of members of the fire fighting force.   That the Legislature so intended is rendered manifest by the fact that when it was desired to make the officers, operators and construction force of the fire alarm service eligible for pensions, a statute was specially enacted to that effect.   St. 1914, c. 519.   That legislation was an implied declaration that the statute now under consideration (St. 1913, c. 800, § 1), passed only the year before, was not in-tended to embrace members of the fire alarm branch within the term " members of the fire department," entitled to pensions.   See also c. 61 Res. of 1892, making two employees of the clerical service eligible to be placed on the pension roll by special act;  and St. 1914, c. 524, authorizing the city of Boston to appoint the superintendent of the repair shop " a member of the fire department, with all the rights, privi-leges and emoluments of the fire fighting force of the de-partment."   These are additional indications that the Legislature never intended that any members of the de-partment except the fire fighting force should be eligible for a retirement pension unless by special act.   See *Simpson* v. *Story*, 145 Mass. 497, 498.

Section 3 of the statute in question (1913, c. 800) reads: " The provisions of this act shall be in addition to and not in repeal of any act now in force relative to pensioning members of the said department."   The original act, St. 1880, c. 107, was entitled " An Act in relation to pensioning disabled members of the fire department of the City of Boston, and for other purposes."   Section 4 provided for the creation

of The Boston Firemen's Relief Fund, a private corporation for the purpose of holding gifts and bequests for the benefit of "members of the Boston Fire Department." The cases of *Fickett* v. *Boston Firemen's Relief Fund*, 220 Mass. 319, and *Nolan* v. *Boston Firemen's Relief Fund*, 236 Mass. 420, decided that the right to share in the benefits of this fund was not confined to men in the fire fighting force. Under these decisions the petitioner and other employees of the repair shop undoubtedly are " members of the Boston Fire Department " within the meaning of that phrase as used in said § 4, and as such are beneficiaries of the charitable fund. It does not necessarily follow, however, that the Legislature intended to include them in the same phrase as it was used in § 1, which provided for the payment of pensions from public funds raised by taxation. And while the question is not free from difficulty, we are of opinion, for the reasons above stated, that the intention and effect of the St. 1913, c. 800, § 1, were to confine the right to be retired and placed upon the pension roll at the age of fifty-five years to the members of the fire fighting force of the department. See *Commonwealth* v. *Martin*, 17 Mass. 359, 362; *Texas* v. *White*, 7 Wall. 700, 721; *Feagin* v. *Comptroller*, 42 Ala. 516, 522; *River Wear Commissioners* v. *Adamson*, 2 App. Cas. 743, 763; *Church of the Holy Trinity* v. *United States*, 143 U. S. 457.

*Petition dismissed.*