Tracy *v*. Cambridge Junior College.

ROSE MARIE TRACY *vs*. CAMBRIDGE JUNIOR COLLEGE.

Middlesex.    October 3, 1973. — December 12, 1973.

Present:    TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Employer's Liability,* Employer not covered under Workmen's Compensation Act, Laborer or workman. *Workmen's Compensation Act,* To whom act applies. *Words,* "Laborers, workmen and mechanics."

In an action for personal injuries brought by an employee against her employer corporation, the evidence warranted findings that the president of the corporation, his son, and his wife were employees thereof besides the plaintiff and that, with respect to G. L. c. 152, § 1 (4) (c), there were more than three persons employed by the corporation. [370-371]

In an action for personal injuries brought by an employee against her employer, it was held that the employee, who had the title "assistant librarian" but who made only $60 a week, had typing, stenographic and record keeping duties, answered the telephone, served as a receptionist, countersigned checks, and supervised no one, could be considered a laborer or workman within G. L. c. 152, § 1 (4) (a). [371-376]

TORT. Writ in the Superior Court dated August 15, 1967.

The action was tried before *Moynihan, J.*

*John M. Hall (Gene D. Dahmen* with him) for the defendant.

*Michael B. Latti (Robert S. Wolfe* with him) for the plaintiff.

HENNESSEY, J.   The plaintiff was an employee of the defendant corporation, which operated a private school in Cambridge. On July 20, 1967, the plaintiff fell and suffered personal injuries while working in one of the buildings owned and occupied by the defendant corporation. The plaintiff's action is in two counts in tort. Count 1 alleges in substance that the defendant was not a subscriber under the Workmen's Compensation Act contrary to the requirements of the law and that the plaintiff is therefore entitled to recover damages against the defendant. Count 2 alleges that the defendant was a corporation operating for private profit, that it negligently failed to maintain its premises in a safe condition, and that the plaintiff was injured as a consequence. The defendant's answer contained, inter alia, the defence that on the date of the plaintiff's injury it was immune from liability because it was a charitable corporation. See *Ricker* v. *Northeastern Univ.* 361 Mass. 169, 170-172 (1972).

At the conclusion of all of the evidence the defendant filed motions for a directed verdict on each of the two counts. These motions were denied and the defendant's exceptions were saved. In addition, with reference to count 2 only, the defendant excepted to the judge's refusal to give certain instructions to the jury concerning charitable immunity, and to the admission of certain evidence of the condition of the floor outside the scope of the plaintiff's answers to the defendant's motion for specifications.

The jury returned identical verdicts for the plaintiff on counts 1 and 2. We have concluded that the defendant's motion for a directed verdict as to count 1 was properly denied. Consequently we have found it unnecessary to consider the exceptions related to count 2.

1. The plaintiff in count 1 of her declaration asserts a tort action deriving out of the provisions of G. L. c. 152, the so called workmen's compensation statute. The essential elements of proof of such an action are in substance that she sustained personal injuries in the course of her employment; that her employer was required by law to be an insured per-

Tracy *v.* Cambridge Junior College.

son or a self-insurer for her benefit under the workmen's compensation statute; and that it failed to provide such insurance or to be a self-insurer.

These necessary elements of proof are established by the application of G. L. c. 152, §§ 1, 66, and 67. The text of those sections of the statute, as of the date of the accident and in so far as they are relevant to this case, is set out in the margin.[1] It is not disputed here that the plaintiff sustained her injuries while working in the course of her employment by the defendant. Neither is it disputed that the defendant was not insured or a self-insurer under the Workmen's Compensation Act at the time of the accident. Nevertheless, the defendant argues that it was not required by law to be insured or a self-insurer, in that § 1 (4) made the provisions of the statute elective as to the defendant. Specifically, the defendant relies on its assertions that it was (1) a charitable or educational institution, and (2) an employer of three or less persons, within the meaning of § 1 (4). Therefore, the defendant says that, as it was not required to be insured or a self-insurer, it was entitled to a directed verdict under count 1 of the plaintiff's declaration. We do not agree.

---

[1]"Section 1. The following words as used in this chapter shall, unless a different meaning is plainly required by the context or specifically prescribed, have the following meanings: . . . (4) 'Employee', every person in the service of another under any contract of hire, express or implied, oral or written . . . .. The provisions of this chapter shall remain elective as to the employers of the following: (a) Persons other than laborers, workmen and mechanics employed by religious, charitable or educational institutions. . . . (c) Persons . . . employed by employers of three or less persons. . . . (5) 'Employer', an individual, partnership, association, corporation or other legal entity . . . .. (6) 'Insured' or 'insured person', an employer who has provided by insurance for the payment to his employees by an insurer of the compensation provided for by this chapter, or is a self-insurer under subsection 2 (a) or 2 (b) of section twenty-five A."

"Section 66. In an action to recover damages for personal injury sustained within or without the commonwealth by an employee in the course of his employment or for death resulting from personal injury so sustained it shall not be a defense: 1. That the employee was negligent; 2. That the injury was caused by the negligence of a fellow employee; 3. That the employee had assumed voluntarily or contractually the risk of the injury; 4. That the employee's injury did not result from negligence or other fault of the employer, if such injury arose out of and in the course of employment."

"Section 67. Section sixty-six shall not apply to actions to recover damages for personal injuries received by employees of an insured person or a self-insurer. Para-

It is clear that the defendant would have been entitled to a directed verdict on count 1 if its status had been conclusively established as an employer of three or less persons. Further, even if the defendant could be found to have employed four or more employees, a directed verdict for the defendant would have been required if it had been shown as matter of law that (1) the defendant was a charitable or educational institution, and (2) the plaintiff was not a laborer, workman or mechanic within the meaning of G. L. c. 152, § 1 (4) (a). Our examination of the evidence discloses that the jury were warranted in concluding that the defendant employed more than three persons and, even assuming that the defendant was a charitable or educational institution, that the plaintiff was a laborer or workman within the meaning of the statute. It follows that the jury were warranted in concluding, as they must have done, that the defendant was required by law to be an insured or a self-insurer under the statute.

As to the number of persons employed by the defendant, the evidence warranted a conclusion that there were at least four persons employed, although it is clear that the status of some of them was arguably equivocal. In addition to the proof of the plaintiff's status, it was shown that one Dr. Irving Richards was president of the corporation and a salaried member of the faculty. His son, Paul Richards, because of the serious illness of his father, had assumed his father's administrative duties including the paying of bills, the writing of letters, and the keeping of records. He had completed dictation to the plaintiff just before her accident occurred. He had been performing these functions for about two weeks. The jury could find that he was an employee even though there was some evidence that he was not being compensated for the work.

It could also be found that Dr. Richards's wife was an employee, since she acted as hostess of the college and office assistant. She, with her husband, received the benefits of an

graph 4 of said section sixty-six shall not apply to actions to recover damages for personal injuries sustained by any person, whose employer has a right of election as provided in paragraph 4 of section one.''

eight-room apartment at what could be found to be a sub-
stantially reduced rental. She received additional compensa-
tion when special efforts were required. As in the situation
of Paul Richards, it is not controlling that no more specific
contract of employment or arrangement for compensation
was shown. See *Barstow* v. *Old Colony R.R.* 143 Mass. 535
(1887); *Cameron* v. *State Theatre Co.* 256 Mass. 466 (1926);
*Castagna's Case,* 310 Mass. 325 (1941).

In view of our above conclusions, we need not consider the
further contentions of the plaintiff that, although ten faculty
members of the school had completed their work for the year
and had been compensated in full, they had such a contin-
uous relationship to the school as to support a finding that
they were employees, within the meaning of the statute, at
the time of the plaintiff's injury.

The defendant's contention that as matter of law it was a
charitable or educational corporation, or both, and that the
provisions of G. L. c. 152 were thus elective, is disputed by
the plaintiff. She relies upon detailed evidence of the nature
and extent of corporate shares as well as the identities and
privileges of the share owners, to support her premise that
the charitable status of the defendant was at best a jury issue.
To support her argument that the jury were also warranted in
concluding that the defendant was not, at the time of the ac-
cident, an educational institution, she points to proof that
the educational activities of the school had been suspended
for at least the following academic year by reason of Dr.
Richards's serious illness.

We need not consider the issue as to the charitable or edu-
cational status of the defendant, since we have concluded
that the evidence warranted a finding by the jury that the
plaintiff was a laborer or workman within the meaning of
that term in § 1 (4) (a). We have before us no exceptions as to
the judge's charge. Therefore we must assume that the jury
were properly instructed on this and all other issues, that the
jury found the plaintiff to be a laborer or workman under
the statute and that they found that workmen's compensa-
tion coverage for her was required under § 1 (4) (a).

In concluding that the plaintiff could be found to be a laborer or workman within the meaning of c. 152, § 1 (4) (a)[2], we turn first to a determination of the nature of the plaintiff's work. While she apparently held the title of assistant librarian, it is the nature of the work performed and not her title which must govern. Cf. *Sawyer* v. *Bay State Motor Exp. Co.* 89 F. Supp. 843 (D. Mass. 1948). It is clear from the record that her basic job classification would be that of a secretary. She had typing, stenographic and record keeping duties, answered the telephone, served as a receptionist, and countersigned checks. She supervised no one and was apparently under the direct supervision of Dr. Richards. Her work was clearly clerical rather than what is usually thought of as physical, and thus the issue before us is whether such a clerical employee could be found to be a workman or laborer under the statute. We turn to an analysis of that question.

At the outset it should be pointed out that the question is one of first impression here and, as it derives from the specific peculiarities of the Massachusetts Workmen's Compensation Act, G. L. c. 152, it apparently has never been squarely presented elsewhere either.[3] It is true that we have interpreted the terms workman and laborer under both § 1 (4) (a), dealing with religious, charitable and educational institutions and directly applicable here, and §§ 68-75, dealing with governmental units and applicable indirectly. However, in each of those cases the nature of the work under consid-

---

[2]No contention is made by either party that she could be considered to be a mechanic. On the record before us it is clear that a conclusion that she was a mechanic is not warranted.

[3]Cases cited by the defendant from the State courts of New York were decided under a very different statute from our own. As the New York Workmen's Compensation Law was drafted specifically to cover "hazardous employments" and "intrinsically dangerous trades," *Westbay* v. *Curtis & Sawyer,* 198 App. Div. (N. Y.) 25, 29 (1921), affd. 232 N. Y. 555 (1921), it is not surprising that its phrase "workmen or operatives" has been held not to encompass clerical workers. *Clark* v. *Voorhees,* 194 App. Div. (N. Y.) 13 (1920). Chapter 152 has broader aims and for most employers of four or more persons covers all employees, § 1 (4). While coverage for employees of religious, educational, and charitable institutions is restricted by § 1 (4) (a) to the categories here at issue, where the Massachusetts Legislature meant to make coverage depend on the hazardous nature of the employment involved it said so explicitly. § 1 (4) (c). The section before us did not so specify and, accordingly, the New York precedents cited by defendant are of little value to us here.

eration was substantially different from that involved here.

Nevertheless, the defendant argues somewhat persuasively that the trend of those decisions and the reasoning therein expressed support the contention that the plaintiff here was as matter of law not a workman or laborer. This court has interpreted "workmen" to "broadly embrace those who are skilled users of tools" and "laborer[s]" to mean "person[s] without particular training who . . . [are] employed at manual labor." *Devney's Case,* 223 Mass. 270, 272 (1916). It was early said that these terms "are used in a restrictive sense designed to distinguish certain well known classes of servants from other classes." *Lesuer's Case,* 227 Mass. 44, 46 (1917). Under such reasoning it was held or stated that a hoseman in the Boston fire department, *Devney's Case, supra,* a supervisory janitor whose work was not of "menial character," *White's Case,* 226 Mass. 517, 521 (1917), a teacher in an industrial school, *Lesuer's Case,* 227 Mass. 44 (1917), and a call fireman, *Randall's Case,* 279 Mass. 85 (1932), were all outside the terms of the statute.

Since 1943 when c. 529, § 3, amended the act to cover religious, charitable and educational institutions there have been only two cases which dealt with the phrase "laborers, workmen and mechanics" under the present c. 152, § 1 (4) (a). A student nurse was held to be a laborer where she worked regular eight hour shifts at "menial and manual" tasks in a hospital. *Brewer's Case,* 335 Mass. 601 (1957). As her work was clearly compatible in character with jobs previously held covered, her potential professional career was irrelevant to the question at hand. Nevertheless, the decision might be said to indicate a willingness to apply the terms to jobs not commonly thought by the general public to be encompassed by them. Similarly, the chief of the private police force at Harvard University was held not to be a workman largely because of the overwhelmingly supervisory nature of his job. *Randall's Case,* 331 Mass. 383 (1954). But cf. *Devney's Case,* 223 Mass. 270 (1916), which might have seemed to foreclose the possibility that any policeman was a workman.

From all of these cases it can be argued that the plaintiff here cannot properly be found to be a workman or laborer. However, since the time of the earlier of these decisions there have been both legislative changes and policy statements on workmen's compensation from this court that provide precedential justification for taking a broader view of the meaning of the terms "laborers, workmen and mechanics."[4]

Successive amendments of c. 152, § 69, have redefined the phrase "laborers, workmen and mechanics" and broadened the option of governmental units to include more and more of their personnel within these "limited" categories. Statute 1927, c. 309, § 12, specified that "[t]he terms . . . shall include foremen, subforemen and inspectors . . . to such extent as the . . . [governmental unit] shall determine . . .." Statute 1936, c. 403, provided that the terms ". . . shall include other employees except members of a police or fire force, *regardless of the nature of their work* . . . to such extent as the . . . [governmental unit] shall determine . . ." [emphasis supplied]. This legislated option to consider any employee a laborer, workman or mechanic was limited by St. 1939, c. 468, which decreed that "all employees of any such city or town, except members of a police or fire force, who are engaged in work being done under a contract with the state department of public works . . ." were to be covered regardless of the expressed desires of the governmental unit involved. Having already broadened the terms to include all employees, the Legislature, by St. 1966, c. 401, decreed that "elected or appointed officers . . . except the mayor, city councillors, selectmen or members of the police or fire force" may also be designated laborers, workmen and mechanics. The text of these amendments makes clear that the definition applies only to the sections on government employees. At the time of the passage of all but the last of them the phrase in question was applicable only in those sections.

---

[4]These changes were not relevant to the decision of the two most recent cases as one of the employees involved was found to be performing menial work and was therefore eligible for coverage under the old cases, *Brewer's Case,* 335 Mass. 601 (1957), and the other was denied coverage due to the supervisory nature of his work, *Randall's Case,* 331 Mass. 383 (1954).

Statute 1943, c. 529, § 3, however, inserted what is now
c. 152 § 1 (4) (a), and thereby made mandatory the coverage
of laborers, workmen and mechanics employed by religious,
charitable or educational institutions. The old phrase was
not defined for the purposes of this new subsection; as a
result its construction must be for this court. While ordin-
arily "words used in one place in a statute with a plain mean-
ing are given the same meaning when found in other parts of
the same statute," *Randall's Case,* 331 Mass. 383, 386
(1954), to import directly the definition contained in § 69
into § 1 (4) (a) would be illogical. The option provided by the
§ 69 language, "to such extent as the . . . [governmental
unit] shall determine," was written for employers who may
accept or reject workmen's compensation altogether and is
obviously inappropriate for employers as to whom some cov-
erage is mandatory.

Nevertheless, the willingness of the Legislature to interpret
the phrase so broadly, as demonstrated in their successive
amendments to § 69, cannot be without relevance to our task
of defining the terms under § (4) (1). Our decisions, more-
over, are in harmony with this philosophy of construing the
terms so as to promote broad coverage by the act. Most
recently and most explicitly, we have stated that "[t]he
workmen's compensation act is to be construed broadly to
include as many employees as its terms will permit." *War-
ren's Case,* 326 Mass. 718, 719 (1951). See also *Young* v.
*Duncan,* 218 Mass. 346, 349 (1914); *Slavinsky* v. *National
Bottling Torah Co.* 267 Mass. 319, 321 (1929); *Clark* v. *M.
W. Leahy Co. Inc.* 300 Mass. 565, 569 (1938). Considering
the broad protective function of the act, and the history of
the phrase "laborers, workmen and mechanics" as outlined
above, it is our conclusion that the terms should be construed
so as to allow the inclusion of the plaintiff. It is clear that a
nonprofessional, nonsupervisory clerical employee such as
the plaintiff, making only $60 a week and performing the
secretarial, receptionist, stenographic and record keeping
functions the jury were entitled to find she performed, can be
considered a laborer, workman or mechanic for the purposes

of § 1 (4) (a) of the Workmen's Compensation Act.

In so holding we stress that we are not overruling any of our prior cases. We recognize that this decision represents a departure from the tenor of earlier authority, which emphasized the menial or physical nature of the tasks involved. E.g. *White's Case,* 226 Mass. 517 (1917). However, we believe that the present decision can be harmonized with these earlier cases. While the tools used by the plaintiff (telephone and typewriter) may not have been tools in the same sense as those used by workmen in prior cases, they are nevertheless tools. We believe that the nature of her required tasks was such that the Legislature intended that workers of her type should be covered by the Workmen's Compensation Act. The provision for elective coverage in § 1 (4) (a) should be interpreted so as to narrow its application to employees in a supervisory, professional or executive position.

2. The jury returned identical verdicts for the plaintiff as to the two counts. Since the plaintiff is entitled to satisfaction on only one of the two verdicts, and since we have concluded that she is entitled to judgment on the verdict as to count 1, it is unnecessary for us to consider the defendant's exceptions as to count 2. Accordingly, the defendant's exceptions are overruled as to count 1, and count 2 is to be treated as waived by the plaintiff.

*So ordered.*