374 Mass. 25                                                    25

Liberty Life Assurance Co. of Boston *v.* State Tax Commission.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON *vs.* STATE
TAX COMMISSION.

Suffolk. September 15, 1977. — December 16, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Statute,* Construction. *Taxation,* Appellate Tax Board, Insurance company. *Appellate Tax Board.*

An insurance company which filed a proper appeal to the Appellate Tax
Board under G. L. c. 63, § 71, from the denial of an abatement was
not barred from pursuing the appeal by the fact that, at an earlier date
and on its own motion, it had sought and obtained from the State Tax
Commission an abatement of a portion of its excise on grounds unre-
lated to the subsequent abatement application. [27-30]

APPEAL from a decision of the Appellate Tax Board.

*Mark A. Michelson* for the taxpayer.

*Mitchell J. Sikora, Jr.,* Assistant Attorney General, for the
State Tax Commission.

WILKINS, J. We are concerned with whether a domestic
insurance company which filed an apparently proper ap-
peal to the Appellate Tax Board (board) under G. L. c. 63,
§ 71, is nevertheless barred from pursuing that appeal
because, at an earlier date and on its own motion, it sought
and obtained from the State Tax Commission (commission)
an abatement of a portion of its excise on grounds unrelated
to its subsequent appeal. We conclude that such a successful
applicant for an abatement loses neither its right to seek a
subsequent abatement nor, if the abatement is denied, its
right to appeal seasonably to the board.

The facts are not in dispute. Liberty Life Assurance Com-
pany of Boston (Liberty) seasonally filed a domestic life in-
surance company excise return for the taxable year ended
December 31, 1971. A similar return was filed for 1972.
Part of the excise is determined from certain premiums re-

ceived (G. L. c. 63, § 20), and another part is based on a percentage of the company's total gross investment income (G. L. c. 63, § 22A). On December 10, 1973, Liberty filed separate applications to abate part of the premium portion of its excises for both 1971 and 1972. Certain premiums on which the premium portion of the 1971 and 1972 excises had been based subsequently became allocable to another State and, because Liberty had already paid the excises here, it claimed an abatement of a part of each excise. On March 27, 1974, the abatements were allowed as requested. Liberty had no occasion to appeal these determinations to the board and did not do so.

In August, 1974, Liberty filed an application for an abatement of its 1971 excise, asserting a constitutional challenge to that portion of the excise which was based on its gross investment income. The Legislature had established this portion of the excise by G. L. c. 63, § 22A, inserted by St. 1971, c. 555, § 27, and made applicable to taxable years ending on and after December 31, 1971 (see St. 1971, c. 555, § 67). A similar application for an abatement was filed in August, 1975, with respect to the excise payable for the year ended December 31, 1972. The commission took no action on the application for 1971, and Liberty appealed to the board. The commission denied the application for 1972, stating that "[t]he application for abatement of the 1972 insurance excise having been acted upon by the State Tax Commission on March 27, 1974, no jurisdiction for further action lies with the State Tax Commission." Liberty appealed from that decision also. Each appeal was proper in all respects except for the issue in dispute here.

The board in each case concluded that the appeals were not properly before it and allowed the commission's pleas in bar. In its findings of fact and report (G. L. c. 58A, § 13), the board relied on two of its opinions, issued in 1966, in which it concluded that it had no jurisdiction to hear those 1966 appeals. The board had dismissed each 1966 appeal because the appellant had previously been assessed a greater corporate excise than shown on its return, had sought and

374 Mass. 25                                                27

Liberty Life Assurance Co. of Boston v. State Tax Commission.

obtained an abatement of that additional assessment, and had not appealed.[1] The issues in the second applications were unrelated to those in the earlier applications. In the case now before us, the board quoted extensively from these two opinions without referring to the fact that in those earlier cases the first applications for abatements were the product of disputes between the commission and the corporation, whereas here there was no initial dispute between the commission and Liberty.

We think the board has misapplied its earlier opinions and has failed to recognize the distinguishing character of Liberty's situation. To us it is unreasonable to bar an appeal, which is otherwise proper, on the ground that, on its own initiative, the appellant previously had sought an abatement on an unrelated issue and had been granted that abatement. The board's decisions seem to require an applicant for an abatement to raise all issues at one time or forever lose its right to appeal from future rulings of the commission concerning the same tax year.

Section 71 of G. L. c. 63, as amended through St. 1961, c. 277, in effect at all relevant times, but since repealed by St. 1976, c. 415, § 102, provided that "any party aggrieved by any decision of the commission upon any matter arising under this chapter from which an appeal is given, may appeal to the . . . [board] within ninety days after the date of notice of the commission's decision or within six months after the time when the application for abatement is deemed to be denied." Section 71 literally applied to Liberty's appeals. We need not decide whether the board's earlier rulings were correct on the facts of the cases then before it. We note, however, that the board's earlier interpretation of § 71 has received some publicity[2] and, although it is an administrative rather than a judicial construction, perhaps that interpretation may be treated as affirmed by the Legis-

---

[1] As in this case, the commission's notices of its decisions stated that "[a]ny amount not abated is hereby disallowed."

[2] See R.F. Barrett & A.C. Bailey, Taxation § 884, at 461 (2d ed. 1970).

lature's enactment of somewhat similar language in G. L. c. 62C, § 39, inserted by St. 1976, c. 415, § 22, and made effective January 1, 1977 (see St. 1976, c. 415, § 116). See *Rosenbloom* v. *Kokofsky,* 373 Mass. 778, 781-782 (1977); *Randall's Case,* 331 Mass. 383, 386 (1954); 2A C. Sands, Sutherland Statutory Construction § 49.09 (4th ed. 1973).

We are unpersuaded, however, that Liberty could have appealed to the board from the commission's entirely favorable ruling on the premium portion of the excise and then argued the illegality of the investment income portion of the excise, a matter unrelated to its abatement application. General Laws c. 63, § 71, permitted an appeal by "any party aggrieved by any decision of the commission." Liberty was not aggrieved by the allowance in full of its first abatement application, and there was no other "decision of the commission" from which Liberty could have appealed. The printed words on the abatement certificate — "Any amount not abated is hereby disallowed" — had no application to Liberty's situation, and cannot in fairness be relied on as a denial of all possible requests for abatement not made by Liberty.

It is illogical to permit an "appeal" to the board on a claim not involved in an application for abatement. There would be no opportunity for a prior administrative determination of the appellant's newly expressed claim for abatement. The board might be confronted, therefore, with an issue on which there is no dispute between the appellant and the commission. The commission has cited no authority for the proposition that an appellant is entitled to raise before the board a claim for abatement not made to the commission. In a hearing before the board, an appellant may advance legal theories and present facts not relied on before the commission, but the appellant may not present a request for abatement of a portion of an excise not involved in any respect in its application to the commission. Indeed, in its pleas in bar, the commission argued that, even if the 1972 appeal was filed seasonably, the board may not pass on

that appeal because the commission had not acted on the substance of that claim.

The commission's argument can have validity only if the law of the Commonwealth requires all issues and all abatement applications either to be consolidated in one application or to be presented to the commission in sufficient proximity that one timely appeal can be taken from the commission's decision. There is nothing in former G. L. c. 63, § 51,[3] to indicate such an intention. Section 51 permitted a corporation to apply for abatement of the excise shown on its return "at any time within three years from the last day for filing . . . [its] return." This language does not state that only one application may be filed, and it should not be construed to encourage applicants to wait until the end of the three-year period before seeking abatements.

The commission itself recognizes in its argument here that a second application for an abatement is appealable in some circumstances, but argues that an appeal is not appropriate in this case.[4] The commission asserts that, where the facts and law concerning the second application were known or available at the time of the first application, all such matters are foreclosed when the time for appeal expires after the commission acts, even favorably, on the first application. This concept of compulsory joinder of claims is not recognized in §§ 51 and 71 and has no validity in a nonadversary

---

[3] General Laws c. 63, § 51, since repealed by St. 1976, c. 415, § 102, granted Liberty three years from the last day for filing each return to apply for an abatement.

[4] The commission grants that a second application for an abatement would be appropriate on new found facts, and agrees that in particular instances the judgment will be close, "requiring careful findings." The commission also would allow a second application where the first is a return which itself shows an overpayment (see G. L. c. 63, § 51, as appearing in St. 1958, c. 503, § 1, repealed by St. 1976, c. 415, § 102), where there is a second assessment imposed, and where there is a subsequent change in administrative or decisional law. Both parties agree that a second application for an abatement on the same ground would not give the applicant a second chance to appeal to the board. See *Fredkin* v. *State Tax Comm'n*, 369 Mass. 973 (1976).

30                                                         374 Mass. 25

Liberty Life Assurance Co. of Boston *v*. State Tax Commission.

situation where an application for abatement is presented seeking a reduction of the excise shown on the return and the commission agrees fully with the application. Such a case is unlike those on which the board relied where the commission imposes an additional assessment, thus triggering an adversary relationship which should prompt the taxpayer to evaluate its entire relationship with the taxing authorities. We decline to treat simple revisions in Liberty's excise returns as traps which Liberty unwarily set for itself. To say that Liberty lost all its appellate rights concerning entirely separate issues when it failed to appeal from a ruling completely in its favor, in a matter initiated by it, would be unfair in the absence of a statute or perhaps a regulation or administrative interpretation (consistent with a statute which is ambiguous), mandating such a result.

The decisions of the Appellate Tax Board are reversed and the pleas in bar should be denied.

*So ordered.*

KAPLAN, J. (concurring). It would be quite in keeping with the modern, now accepted view of "claim," "splitting" of a claim, and required consolidation of defenses, to hold that a taxpayer should be obliged to present in a single application all his available grounds for demanding abatement of the annual tax shown on his return, or of an assessment or additional assessment of annual tax, on pain otherwise of forgoing any such ground that he omits. I believe G. L. c. 63, §§ 51, 71, left room for the board to adopt this view, but the 1966 decisions, going on a somewhat different basis, were inconclusive, except perhaps as to abatement of additional assessment. One can say that the commission brought the present decision on itself by failing to promulgate a regulation that might inform taxpayers more clearly how they must proceed. It will perhaps occur to the commission that a procedural distinction between abatement of additional assessment and other abatements is not very satisfac-

tory, and that the route of fashioning a well modulated regulation to govern future cases may still be open to it. See G. L. c. 14, § 4, cl. 1; c. 62C, § 3; see also c. 58A, § 8.